MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2016 ME 31
Docket:       Sag-15-150
Argued:       October 8, 2015
Decided:      February 18, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.

## STATE OF MAINE

v.

## JOHN E. ARNDT

JABAR, J.

[¶1]  John E. Arndt appeals from a judgment of conviction following a jury trial in the Unified Criminal Docket (Sagadahoc County, *Horton, J.*) of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A) (2015), and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2015).  Arndt contends that the court erred in denying his motion to suppress and, at trial, admitting evidence of his blood-alcohol level derived from a blood sample that was seized without a search warrant.  Because we agree with the court's conclusion that there were exigent circumstances at the time of the blood draw to justify the warrantless seizure, we affirm the judgment.[1]

---

[1]  Because we affirm the court's decision, which is based on its determination of the presence of exigent circumstances, we do not reach Arndt's arguments concerning consent.

## I. BACKGROUND

[¶2] The following facts are taken from the court's findings on the motion to suppress, and are reviewed for clear error. *State v. Cote*, 2015 ME 78. ¶ 9, 113 A.3d 805. On April 11, 2014, shortly after 5:00 p.m., a deputy of the Sagadahoc County Sheriff's Department determined that there was probable cause to believe that Arndt was driving under the influence of alcohol.[2] The deputy transported Arndt to the Bath Police Department (Bath PD) station to administer a breath-alcohol test using an Intoxilyzer machine. The deputy took Arndt to the Bath PD station, rather than the closer Topsham Police Department (Topsham PD) station, because he had after-hours access to the Bath PD station. The deputy would have had to call for a Topsham PD officer to meet him to allow access to the Topsham PD station, and he believed that this would have caused an undue delay in administering the test.

[¶3] Once the deputy reached the Bath PD station, he began the administration of the breath-alcohol test. Because of problems with the Intoxilyzer equipment that were not known to the deputy, he made four unsuccessful attempts to obtain a breath-alcohol level using the Intoxilyzer. The first test was taken at 6:02 p.m. and the fourth test at 6:24 p.m. Fearing that further delay would result in

---

[2] Arndt does not challenge that the deputy had probable cause.

the deterioration of evidence of Arndt's blood-alcohol level, the deputy decided to conduct a blood test. The deputy contacted the Bath Fire & Rescue Department to draw a sample of Arndt's blood, and the department sent a paramedic to the Bath PD station within five minutes. The blood draw was conducted at 6:45 p.m. Arndt never objected to any of the tests. Although he signed a consent form, Arndt was never informed of his option to have a physician draw his blood. *See* 29-A M.R.S. § 2521(2) (2015). The deputy never sought a search warrant for the purpose of drawing Arndt's blood. Arndt's blood-alcohol level was measured to be above 0.15 grams of alcohol per 100 milliliters of blood.

[¶4] On May 16, 2014, Arndt was charged by complaint with one count of criminal operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A), and one count of violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A).[3] On July 17, 2014, Arndt filed a motion to suppress the results of the blood test, as well as a motion to dismiss. Following a September 4, 2014, hearing, the court denied both motions. The matter proceeded to a jury trial on March 16, 2015, and following the jury's guilty verdicts on both charges, the court entered a judgment of conviction and sentenced Arndt to commitment for a term of

---

[3] At the time of his arrest, Arndt was on bail with conditions that he not consume or possess alcoholic beverages or commit any criminal act.

4

seven days in county jail, with execution stayed until April 20, 2015. Arndt timely appealed.

## II. DISCUSSION

[¶5] Arndt contends that because the deputy did not have a warrant, there needed to be exigent circumstances present in order to justify the warrantless seizure of a sample of his blood. He argues that the United States Supreme Court's holding in *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013), that metabolization of alcohol by the body does not constitute exigent circumstances per se, should control in this case. He asserts that any exigent circumstances resulting from a delay in the administration of the Intoxilyzer test was created by the deputy's decision to transport Arndt to the Bath PD station for the breath test, rather than to a nearer station. Arndt further argues that our holding in *State v. Dunlap*, 395 A.2d 821 (Me. 1978), bars the consideration of any delay caused by law enforcement as exigent circumstances.

[¶6] The State argues that destruction of evidence has been recognized as exigent circumstances, and that the metabolization of alcohol by the body is such an exigency. It maintains that although *McNeely* did not adopt a per se rule that metabolization of alcohol alone supports a determination of exigent circumstances in every case of operating under the influence, it may be an exigency in some cases. The State also argues that *Dunlap* only excludes consideration of an

unreasonable delay by law enforcement as exigent circumstances, and that the deputy's actions here were reasonable under the circumstances.

[¶7] We review the court's ultimate determination regarding suppression de novo. *State v. Bryant*, 2014 ME 94, ¶ 8, 97 A.3d 595.

[¶8] Absent consent, law enforcement officials are ordinarily required to secure a search warrant before taking a sample of a defendant's blood. *Schmerber v. California*, 384 U.S. 757, 770 (1966). Generally, searches conducted without a warrant are unreasonable unless the warrantless search is conducted within a limited number of well-recognized exceptions, such as consent by the defendant or exigent circumstances. *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Cormier*, 2007 ME 112, ¶ 15, 928 A.2d 753. Here, the court did not address consent, because it was concerned with the deputy's failure to inform Arndt of his option to choose a physician to draw his blood, and therefore decided the motion on the basis of exigent circumstances.

[¶9] The burden is on the State to prove by a preponderance of the evidence that exigent circumstances excusing the warrant requirement existed. *Dunlap*, 395 A.2d at 824. "The exigent circumstances justification for warrantless searches applies when there is a compelling need to conduct a search and insufficient time in which to secure a warrant." *State v. Rabon*, 2007 ME 113, ¶ 14, 930 A.2d 268 (quotation marks omitted). The presence of exigent circumstances "is not

6

diminished because in hindsight it appears that a search warrant could have been obtained." *Dunlap*, 395 A.2d at 824. However, exigent circumstances do not operate as an exception to the requirement for a search warrant when they arise out of unreasonable delay by law enforcement in obtaining a warrant. *Id.*

[¶10]  In *McNeely*, the United States Supreme Court held that although the natural metabolization of alcohol does not create per se exigent circumstances, it may create exigent circumstances on a case-by-case basis. 133 S. Ct. at 1556. The Court has acknowledged that there may be instances in which this natural bodily process creates exigent circumstances justifying a blood draw without a warrant. *Id.* at 1561.

[¶11]  Arndt's argument concerning *McNeely* fails.[4] Here, the deputy's actions were reasonable under the circumstances. The deputy transported Arndt to the Bath PD station to obtain a breath test, believing that he could more quickly administer a blood-alcohol test in Bath, rather than waiting for a Topsham police officer to grant him access to the nearer Topsham PD station. The deputy unsuccessfully made four separate attempts to obtain a blood-alcohol level using the Intoxilyzer at the Bath PD station. By the time the fourth attempt was

----

[4] The *Dunlap* analysis concerning unreasonable delay by law enforcement is necessarily a part of any analysis of exigent circumstances under *McNeely*. *See McNeely v. Missouri*, 133 S. Ct. 1552, 1563 (2013) (stating that exigent circumstances could arise out of a reasonable delay on the part of law enforcement).

complete, nearly one and one-half hours had passed from the time of the initial arrest. At this point, it was reasonable for the deputy to become concerned that further delay would result in the loss of evidence due to the metabolization of the alcohol in Arndt's body. In order to preserve reliable evidence of intoxication, the deputy proceeded with a warrantless blood test. We affirm the suppression court's determination that exigent circumstances existed, negating the requirement for a search warrant.[5]

The entry is:

Judgment affirmed.

**On the briefs and at oral argument:**

David Paris, Esq., Bath, for appellant John E. Arndt

Katie R. Hollstrom, Asst. Dist. Atty., District Attorney's Office, Bath, for appellee State of Maine

Sagadahoc County Unified Criminal Docket docket number CR-2014-457
FOR CLERK REFERENCE ONLY

---

[5] Arndt does not otherwise challenge his conviction.